UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| KERRI LUREEN, AS GUARDIAN AD LITEM OF S.L., A MINOR; <br><br> Plaintiff, <br><br> vs. <br><br> CHRISTOPHER JOHN HOLL, IN HIS PERSONAL CAPACITY AND AS OWNER;  METRO INITIATIVES, LLC, DOCTOR'S ASSOCIATES, INC., JOHN CLARK, IN HIS PERSONAL CAPACITY AND AS OWNER;  FRANCHISE WORLD HEADQUARTERS, LLC,  SUBWAY IP, INC., <br><br> Defendants. | 4:17-CV-04016-LLP <br><br> ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL <br><br> DOCKET NO. 58 |

**INTRODUCTION**

This matter is before the court on plaintiff Kerri Lureen's amended complaint alleging sex discrimination, hostile work environment, constructive discharge, negligence, and assault and battery.  See Docket No. 46. Jurisdiction is founded on the presence of a federal question, diversity of citizenship of the parties, and the court's supplemental jurisdiction.  See

28 U.S.C. §§ 1331, 1332, and 1367. Plaintiff has filed a motion to compel two categories of discovery. See Docket No. 58. Defendants resist the motion. See Docket No. 72. The Honorable Lawrence L. Piersol, United States District Court Judge, referred plaintiff's motion to this magistrate judge for decision pursuant to 28 U.S.C. § 636(b)(1)(A). See Docket No. 63.

**FACTS**

**A.     Background and Parties**

Plaintiff is the mother and guardian of S.L., a minor. S.L. worked for a Subway restaurant on East Arrow Avenue NE in Watertown, South Dakota, for approximately 9 months, from August, 2015, to March 16, 2016. S.L. was 15 years old at the time she went to work for Subway. S.L.'s claims center around sexual contact perpetrated by her direct manager at Subway, Kiley Ramstorf, a man 14 years older than she. The Watertown Subway was owed at the time by Metro Initiatives, LLC ("Metro"), a business entity owned by defendants Christopher John Holl and John Clark, together with Ramstorf. Metro owned five separate Subway restaurants. Neither party has informed the court of the locations of these restaurants or the dates during which Metro owned the restaurants.

After the sexual contact between S.L. and Ramstorf came to light, Ramstorf was charged criminally, convicted, and sentenced to two years' imprisonment for the crime of sexual exploitation of a minor. Ramstorf had been investigated in 2013 and 2014 for suspected sexual contact with minors, apparently without any criminal charges ever being asserted.

Plaintiff alleges that defendants Doctor's Associates, Inc. ("DIA"); Franchise World Headquarters, LLC ("FWH"); and Subway IP (plaintiff collectively characterizes these parties as "Subway"), provided franchise training and ongoing managerial training of Ramstorf both online, regionally, and at its corporate office in Connecticut. Plaintiff alleges these defendants had substantial control over day-to-day activities of its franchisees, and specifically, over Metro. Plaintiff asserts that the Subway defendants and Metro should be considered a single employer, joint employers, or as principal and agent.

Plaintiff alleges that defendants Holl, Clark, and Metro had prior knowledge of at least one of Ramstorf's prior criminal investigations for sexual contact with minors. Plaintiff alleges all defendants had been made aware of multiple complaints about Ramstorf's inappropriate behavior toward female employees at the Subway store where S.L. worked and that these complaints were brought to defendants' attention prior to the time Ramstorf victimized S.L. Despite this foreknowledge, plaintiff asserts none of the defendants took any appropriate action to address Ramstorf's behavior toward female employees.

**B.      Discovery Disputes**

    **1.      Interrogatory Number 43**

Plaintiff served two discovery requests which are the subject of this motion to compel, one an interrogatory directed to DIA and the other a request for the production of documents directed to defendants. The interrogatory asked the following:

> Interrogatory No. 43:
>
> Identify any and all other claims of sexual harassment or any inappropriate sexual behavior or contact between managers or any other female employees at any of your franchises in the last 10 years including but not limited to formal complaints to the EEOC or litigation resulted and state the manner of resolution of those complaints.

See Docket No. 60-1 at p. 15.

DAI responded to the interrogatory with the objection that it was overbroad, unduly burdensome, not proportional to the needs of the case, and not relevant. Id. DAI explained that the request called for information about franchisees, over which DAI disclaims any management authority regarding managers of Subway franchises or sexual harassment. Id. Also, DAI asserted the discovery request called for information about other franchisees and locations not relevant to this lawsuit. Id.

In a subsequent letter to defense counsel, plaintiff's counsel asserted the discovery request was relevant under Sandoval v. Amer. Bldg. Maint. Indus., Inc., 578 F.3d 787, 802 (8th Cir. 2009). See Docket No. 60-3 at p. 2. Plaintiff did not address the overbreadth or burden objections made by DAI. Id. DAI pointed this lapse out when it responded via letter. See Docket No. 60-4 at p. 2.

Plaintiff's counsel wrote a subsequent letter in response, but misconstrued DAI's position and never addressed the overbroad/undue burden

issue.[1]  See Docket No. 60-5 at p. 2.  In another subsequent letter, plaintiff's counsel wrote that DIA "ha[d] not provided case law supporting your position that such information is not relevant.  If this information is not provided by July 7, 2017, we will have no choice but to file a motion to compel an answer to this interrogatory."  See Docket No. 60-7 at p. 1.

Defense counsel responded by pointing out, again, that plaintiff's counsel had not addressed the objection to interrogatory number 43 on the basis that it was overly broad, unduly burdensome, and not proportional to the needs of the case.  See Docket No. 60-9 at pp. 1-2.  Defense counsel specifically asserted the geographic scope and time limitations of the request were too broad and unduly burdensome.  Id.  Counsel pointed out the request would require DIA to investigate approximately 45,000 Subway restaurants.  Id.

### 2. Second Request for Production of Documents Number 3

Also at issue is plaintiff's request for production number 3, directed to "defendants," which requested defendants to produce a copy of "all joint defense agreements and/or common interest agreements between any of the defendants in this case."  See Docket No. 60-2 at p. 3.  Defendants objected on the grounds of relevancy and privilege.  Id.  Defendants asserted privilege pursuant to the joint-defense, common-interest, work-product and attorney-client privileges.  Id.

---

[1] DAI pointed out the interrogatory asked for information including thousands of franchise restaurants, including international locations.  See Docket No. 60-4 at p.2.  Plaintiff characterized DAI's position in its subsequent position as "you essentially argue that you are refusing to answer this because there may be instances of sexual harassment at franchise stores of which you are unaware."  See Docket No. 60-5 at p.2.

Plaintiff responded with a letter intended as a good faith effort to discuss discovery disputes. See Docket No. 60-6 at p. 5. Plaintiff's counsel represented that "courts have required the text of a joint defense agreement to be disclosed to opposing counsel." Id. In support of this proposition, plaintiff cited five district court cases, none of which were from within the Eighth Circuit. Id. In another subsequent letter, plaintiff's counsel provided citation to South Dakota state authority to the effect that a settlement agreement among some, but not all, parties should be disclosed upon request to any party. See Docket No. 60-7 at pp. 1-2. Plaintiff asserted that the joint defense agreement was relevant to defendants' credibility. Id. Plaintiff then suggested the parties agree to submit the joint defense agreement to the court for *in camera* inspection. Id.

Defense counsel responded that the South Dakota case cited applied to settlement agreements, not joint defense agreements. See Docket No. 60-9 at p. 2. Defense counsel did not address plaintiff's suggestion for *in camera* viewing. Id. In a later email exchange, defense counsel indicated if plaintiff's counsel would identify what types of provisions in the joint defense agreement plaintiff believed were relevant to defendants' credibility, defense counsel would review the agreement and confirm whether such provisions existed. See Docket No. 60-10 at p. 1 (email from defense counsel Adam Chandler dated July 25, 2017, to plaintiff's counsel Sara Show and Steve Johnson). Plaintiff's motion to compel was filed two days later with no further communication documented in the court's record.

**DISCUSSION**

A.   **Good Faith Effort to Resolve the Discovery Dispute**

   1.   **The Standard**

A motion to compel answers to interrogatories or requests for the production of documents is governed by Fed. R. Civ. P. 37. That rule provides in pertinent part as follows:

> On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

See Fed. R. Civ. P. 37(a)(1).

Likewise, the local rules in this district require a movant to attempt to informally resolve matters with his or her opponent before filing a discovery motion:

> No objection to interrogatories, or to requests for admissions, or to answers to either relating to discovery matters shall be heard unless it affirmatively appears that counsel have met, either in person or by telephone, and attempted to resolve their differences through an informal conference. Counsel for the moving party shall call for such conference before filing any motion relating to discovery matters. . . .

See D.S.D. LR 37.1.

Case law puts "flesh on the bone" of the meet-and-confer requirement. The certification mentioned in Rule 37 must include "the names of the parties who conferred or attempted to confer, the manner by which they communicated, the dispute at issue, as well as the dates, times, and results of

their discussions, if any." Shuffle Master, Inc. v. Progressive Gams, Inc., 170 F.R.D. 166, 170-171 (D. Nev. 1996). "Good faith" requires that the parties made a genuine attempt to resolve the discovery dispute without involving the court. Id. Finally, "conferment" requires the parties "to have had an actual meeting or conference." Id. Hence, prior to making a motion to compel, "a moving party must personally engage in two-way communication with the nonresponding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention." Id. Unilaterally sending correspondence demanding that the other side comply with a discovery request does not satisfy the requirement. Id. at 172.

Thus, where there is no legitimate reason for expediency, counsel calling opposing counsel and leaving a vague message two hours before filing the discovery motion does not satisfy the meet-and-confer requirement. Alexander v. Federal Bureau of Investigation, 186 F.R.D. 197, 198-199 (D.D.C. 1999). Nor is the meet-and-confer requirement rendered moot merely because when counsel did file the discovery motion it was opposed by the other party. Id. The purpose of the meet-and-confer requirement is to "force litigants to attempt to resolve, or at least narrow, the disputed issues to prevent the unnecessary waste of time and effort on any given motion." Id. at 199.

Nor is the meet-and-confer requirement satisfied by the sending of a letter that indicated that a motion to compel would be filed if the opposing party did not comply with discovery requests. Bolger v. District of Columbia,

248 F.R.D. 339, 343-344 (D.D.C. 2008). Likewise, in Ross v. Citifinancial, Inc., 203 F.R.D. 239 (S.D. Miss. 2001), the court specifically held that sending a letter discussing the discovery issue did not satisfy the meet-and-confer requirement or the prerequisite of a certification of having conferred in good faith. Id. at 239-240. The court noted that the requirement was not "an empty formality," and that, in a large number of cases, obliging the attorneys to meet and confer resulted in resolution of the discovery dispute. Id.

The decision in Cotracom Commodity Trading Co. v. Seaboard Corp., 189 F.R.D. 456 (D. Kan. 1999), illustrates how fact-dependent the inquiry is. In that case, four telephone calls by the movant on a motion to compel were not enough to satisfy the meet-and-confer requirement where all four calls took place while opposing counsel was out of the country on vacation. Id. at 458-459. As the court explained, the meet-and-confer requirement is intended to require counsel to "converse, confer, compare views, consult and deliberate." Id. at 459. Therefore, sending a letter or making an oral request that simply demands compliance with the discovery request generally does not satisfy the meet-and-confer requirement. Id. The court frowned upon the movant's setting of an arbitrary deadline for the filing of a motion to compel because the facts showed that the parties were not at impasse. Id. They had yet to engage in a discussion of the genuineness of the opposing party's objections, what, if any, documents the discovering party was reasonably capable of producing, and what specific, genuine issues remained that could not be resolved without the court's intervention. Id.

In RLI Insurance Co. v. Conseco, Inc., 477 F. Supp. 2d 741 (E.D. Va. 2007), a party was being deposed and refused to answer nine questions during the deposition on the basis of attorney-client privilege or work product doctrine. Id. at 745. The deposing party sought an order compelling the deponent to answer the questions. Id. The party who had refused to answer argued that the motion to compel should be denied because the movant had failed to comply with the meet-and-confer requirement prior to filing the motion. Id. at 745-746. The court found that the movant had satisfied the meet-and-confer requirement by making several suggestions for compromise, both by telephone contact and by letter, and by supplying the resisting party with a list of the specific questions the movant would be seeking to compel. Id.

On the other hand, courts have, in very limited circumstances, excused a moving party's failure to satisfy the meet-and-confer requirement. In Freiria Trading Co. v. Maizoro S.A. de C.V., 187 F.R.D. 47 (D.P.R. 1999), the court excused the movant's failure to satisfy the meet-and-confer requirement where the opposing party's conduct was not just a refusal to provide requested discovery, but also constituted a direct violation of an order from the court. Id. at 48. See also Bolger, 248 F.R.D. at 343-344 (excusing the failure of the movant to satisfy the meet-and-confer requirement because of the long-standing record of the opposing party's refusal to comply with both the plaintiff's requests and the court's specific orders to produce certain discovery).

In Oleson v. Kmart Corp., 175 F.R.D. 570 (D. Kan. 1997), the court excused the movant's failure to meet and confer before filing a motion to

compel where it was apparent to the court based on the number and tenor of discovery disputes which were the subject of the motion that it was unlikely the parties would have resolved their differences. Id. at 571.

## 2. Application of the Standard to Interrogatory 43

It is clear that plaintiff met the standard for trying to resolve the relevancy issue by supplying defendants with on-point, binding case law to the effect that other claims of discrimination in the same office where plaintiff worked are relevant. However, plaintiff's counsel consistently dodged discussing defendants' obvious and more weighty objection that the interrogatory was too broad both as to time and geographic scope.

Defendants explained that there are over 44,000 Subway restaurants, many of them not even in the United States, and that it would be unduly burdensome to document all the sexual discrimination complaints made in each of those restaurants over the course of 10 years. Plaintiff's counsel never offered to restrict their interrogatory to Subway restaurants owned by Metro, or to Subway restaurants in the midwest, or even to Subway restaurants in the United States. Plaintiffs never offered to restrict their request to anything less than a 10-year period. Plaintiff did not satisfy the meet and confer requirement because it never addressed defendants' overbreadth/undue burden objection at all.

Where a discovery request is wholly supported by the law, the requesting party need not make any concessions in its good faith effort to resolve the

11

matter. There are times when a responding party's objections are not being made in good faith or are not well supported by the law. In such a case, the court would not fault the requesting party for failing to amend its discovery request in the conciliation efforts.

But here, a request that encompasses 44,000 restaurants all over the world and encompasses a 10-year period is simply misplaced—a fact that is facially apparent. Nationwide discovery is not available, let alone worldwide discovery, absent a class action or some specialized showing of a pattern or practice of discrimination at a level higher than the plaintiff's employment unit—as where, for example, the perpetrator of the discriminatory conduct has a wide area of authority. See, e.g., Carmen v. McDonnell Douglas Corp., 114 F.3d 790, 791-92 (8th Cir. 1997); E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1217919 at *1-3 (D. Neb. Mar. 15, 2007); Owens v. Sprint/United Mgmt. Co., 221 F.R.D. 649, 653-54 (D. Kan. 2004); Burns v. Hy-Vee, Inc., 2002 WL 31718432, **1-3 (D. Minn. Nov. 21, 2002).

By failing altogether to address the overbreadth/undue burden objection, plaintiff has failed to make a good faith effort to resolve the discovery dispute over interrogatory number 43. Plaintiff should have offered to limit the scope of its request or, alternatively, explained the specialized need for worldwide discovery in this case involving a 15-year old girl employed for 9 months who was alleged to have been discriminated against by a man who was part owner of 5 restaurants, one of which was in a town of approximately 22,000 people.

The court finds plaintiff has not satisfied the precondition for good faith attempts to resolve the issue as to interrogatory 43.

Additionally, the court notes that this case is not an older case with a well-established track record of the parties failing to cooperate with each other on discovery matters. The court does not reach the conclusion, then, that it would be futile to send the parties back to the drawing board on interrogatory number 43 in hopes they can work the matter out between themselves. The court notes that the practice of sending letters and emails back and forth like so many shots fired across the bow is not nearly as helpful as discussing the matter live, in real time, either face to face or on the telephone.

The court notes that plaintiff *did* finally address the overbreadth/undue burden issue in its reply brief. That is too late. This discussion should have occurred *prior* to plaintiff filing her motion to compel, not in the final brief due on the motion.[2]

---

[2] In this regard, the court notes plaintiff cited in its reply brief to Murphy v. Kmart, 5:07-cv-05080-JLV, in support of its 10-year lookback request. Murphy is clearly distinguishable from the facts in this case. First, the Murphy court authorized only a five-year lookback period. Murphy v. Kmart Corp., 255 F.R.D. 497, 510 (D.S.D. 2009). Second, the Murphy court did not authorize nationwide, let alone international discovery, but instead limited discovery to the Western Region where Murphy was employed. Id. at 510-11. Third, Murphy involved a plaintiff who had worked for the defendant for 30 years, not 9 months. Murphy, 5:07-cv-05080-JLV, Docket No. 1, p. 2 at ¶ 9. This is relevant to the requirement of Rule 26 that the discovery request be proportional to the needs of the case. Finally, the court notes that, without a special showing of some kind, discovery would in any case be limited to the period of time the Metro defendants owned a Subway franchise, a time frame that neither party has placed in the record. Plaintiff should take this law into account in engaging in a good faith effort to resolve the dispute over the scope of Interrogatory 43.

### 2. Application of the Standard to 2d Request for Production 3

The court finds plaintiff did satisfy the good faith effort to resolve the discovery dispute as to her request for the joint defense agreement among the defendants. Plaintiff addressed defendants' assertion of privilege directly, by citing to a number of cases indicating that, in those cases, no privilege was found. Although none of the on-point cases were binding precedent from either the Eighth Circuit or South Dakota, plaintiff went on to cite to analogous South Dakota law. The court, accordingly, will address plaintiff's motion to compel on her second request for production of documents number 3.

### B. Motion to Compel Disclosure of the Joint Defense Agreement

The Federal Rules of Civil Procedure are very specific about what a party must do to assert a claim of privilege:

> **(5) *Claiming Privilege or Protecting Trial-Preparation Materials.***
>   (A) *Information Withheld.* When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trail-preparation material, the party must:
>
>   (i) expressly make the claim; and
>
>   (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

See Fed. R. Civ. P. 26(b)(5)(A). Defendants have clearly failed to satisfy the requirements of Rule 26 for asserting privilege. They have not described the document in any way—not even to confirm whether such an agreement exists.

14

They only assert a string of names of asserted privileges, with no information to allow the court or plaintiff to assess those claims.

Because defendants have not properly asserted their claim of privilege as required by Rule 26(b)(5)(A), the court grants plaintiff's motion to compel. Defendants shall provide discovery of the document to plaintiff within 21 days of the date of this order. If a protective order is desired, the parties are encouraged to stipulate to terms of a protective order that are mutually agreeable to them. If the parties are unable to agree upon terms for such an order, defendants may propose an order to the court whereupon plaintiff will have an opportunity to respond before the court decides whether to grant such an order and, if so, what terms should be included.

## CONCLUSION

Based on the foregoing law, facts, and analysis, the court hereby grants in part and denies in part plaintiff's [Docket No. 58] motion to compel. The motion to compel defendants to answer interrogatory 43 is denied for failure by plaintiff to satisfy the requirement of engaging in a good faith effort to resolve this discovery dispute prior to filing the instant motion to compel. The motion to compel defendants to produce the joint defense agreement in response to the second request for the production of documents number 3 is granted because defendants failed to properly support their assertion of privilege.

**NOTICE OF RIGHT TO APPEAL**

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Id. Objections must be timely and specific in order to require review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED August 31, 2017.

BY THE COURT:

*/s/ Veronica L. Duffy*

VERONICA L. DUFFY
United States Magistrate Judge