UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| KERRI LUREEN, as Guardian Ad Litem of S.L., a Minor,<br><br>                Plaintiff,<br><br>vs.<br><br>DOCTOR'S ASSOCIATES, INC.; SUBWAY IP, INC.; FRANCHISE WORLD HEADQUARTERS, LLC.; METRO INITIATIVES, LLC, all d/b/a "Subway;" CHRISTOPHER JOHN HOLL, in his personal capacity and as owner; and JOHN CLARK, in his personal capacity and as owner;<br><br>                Defendants and<br>                Third-Party Plaintiffs,<br><br>vs.<br><br>KILEY RAMSTORF,<br><br>                Third-Party<br>                Defendant. | 4:17-CV-04016-LLP<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO QUASH<br><br>Docket No. 85<br><br>and<br><br>DENYING DEFENDANTS' MOTION TO FILE A SURREPLY<br><br>Docket No. 96 |

## INTRODUCTION

This matter is before the court on plaintiff Kerri Lureen's amended complaint alleging sex discrimination, hostile work environment, constructive discharge, negligence, and assault and battery. See Docket No. 56. Jurisdiction is founded on the presence of a federal question, diversity of

citizenship of the parties, and the court's supplemental jurisdiction.  See 28 U.S.C. §§ 1331, 1332, and 1367.  Plaintiff has filed a motion to quash a subpoena *duces tecum* issued by defendants to a non-party.  See Docket No. 85.  Defendants resist the motion and seek permission to file a surreply.  See Docket Nos. 92 & 96.  The Honorable Lawrence L. Piersol, United States District Court Judge, referred plaintiff's motion to this magistrate judge for decision pursuant to 28 U.S.C. § 636(b)(1)(A).  See Docket No. 89.

**FACTS**

**A.   Background and Parties**

Plaintiff is the mother and guardian of S.L., a minor.  S.L. worked for a Subway restaurant on East Arrow Avenue NE in Watertown, South Dakota, for approximately 9 months, from August, 2015, to March 16, 2016.  S.L. was 15 years old at the time she went to work for Subway.  S.L.'s claims center around sexual contact perpetrated by her direct manager at Subway, Kiley Ramstorf, a man 14 years older than she.  The Watertown Subway was owned at the time by Metro Initiatives, LLC ("Metro"), a business entity owned by defendants Christopher John Holl and John Clark, together with Ramstorf.  Metro owned five separate Subway restaurants.  Neither party has informed the court of the locations of these restaurants or the dates during which Metro owned the restaurants.

After the sexual contact between S.L. and Ramstorf came to light, Ramstorf was charged criminally, convicted, and sentenced to two years' imprisonment for the crime of sexual exploitation of a minor.  Ramstorf had

2

been investigated in 2013 and 2014 for suspected sexual contact with minors, apparently without any criminal charges ever being asserted.

Plaintiff alleges that defendants Doctor's Associates, Inc. ("DIA"); Franchise World Headquarters, LLC ("FWH"); and Subway IP (plaintiff collectively characterizes these parties as "Subway"), provided franchise training and ongoing managerial training of Ramstorf both online, regionally, and at its corporate office in Connecticut. Plaintiff alleges these defendants had substantial control over day-to-day activities of its franchisees, and specifically, over Metro. Plaintiff asserts that the Subway defendants and Metro should be considered a single employer, joint employers, or as principal and agent.

Plaintiff alleges that defendants Holl, Clark, and Metro had prior knowledge of at least one of Ramstorf's prior criminal investigations for sexual contact with minors. Plaintiff alleges all defendants had been made aware of multiple complaints about Ramstorf's inappropriate behavior toward female employees at the Subway store where S.L. worked and that these complaints were brought to defendants' attention prior to the time Ramstorf victimized S.L. Despite this foreknowledge, plaintiff asserts none of the defendants took any appropriate action to address Ramstorf's behavior toward female employees.

**B.      Subject of the Motion to Quash**

Previously, defendants had served plaintiff with discovery requests seeking information about both plaintiff's and S.L.'s cellular telephone service. Plaintiff refused to produce the requested information aside from telling

3

defendants, over objection, what S.L.'s phone number was and the identity of her cell phone service provider. Discussions ensued in which the parties debated the relevance and scope of the discovery requests. Defendants indicated plaintiff had promised to produce certain information and then did not follow through. Defendants then served S.L. and plaintiff's cell phone service provider with a subpoena *duces tecum.* See Docket No. 87-2.

The subpoena, served on TracFone Wireless, Inc., d/b/a Straight Talk (hereinafter "TracFone"), directed TracFone to produce two categories of documents with regard to both S.L.'s and plaintiff's cell phones:

1. Documents or records within [TracFone's] possession and control, showing all subscriber information, including: the date, time, originating and receiving phone numbers, and duration for all incoming and outgoing **calls** from May 2015 to the present.

2. Documents or records within [TracFone's] possession and control, showing all subscriber information, including: the date, time, and originating and receiving phone numbers for all incoming and outgoing **text messages** from May 2015 to the present.

See Docket No. 87-2 at p. 4 (emphasis added).

As can be seen, the subpoena does not seek *content* of any phone calls or text messages. Instead, it seeks a *log* of all phone calls made and received (including duration), and all text messages sent and received, for the stated time period. The subpoena also seeks subscriber information for both telephone numbers.

Plaintiff objects to the subpoena and seeks the court's order quashing it. See Docket No. 85. Plaintiff argues the information is not relevant and that the

time frame is unduly broad.  Further, plaintiff argues that the information sought is confidential.

## DISCUSSION

**A.      Provisions of Rule 45**

Rule 45 of the Federal Rules of Civil Procedure allows a party to serve a subpoena for the production of documents on a nonparty, with notice to the other parties in the litigation.  See FED. R. CIV. P. 45(a).  The nonparty on whom the subpoena is served must be protected from undue burden or expense.  Id. at subsection (d)(1).[1]

A subpoena *must* be quashed or modified if it requires the disclosure of privileged or other protected matter if there is no exception or waiver applicable, or if the subpoena subjects a person to undue burden.  Id. at subsection (d)(3)(A).  A subpoena *may* be quashed or modified to protect a person affected by a subpoena if the subpoena requires disclosure of a trade secret or other confidential research, development, or commercial information. Id. at subsection (d)(3)(B).

"Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought."  Charles A. Wright, Arthur R. Miller, Mary K. Kane, Richard L. Marcus, A. Benjamin

---

[1] Plaintiff cites Precourt v. Fairbank Reconstruction Corp., 280 F.R.D. 462 (D.S.D. 2011), for a six-part test regarding undue burden asserted by a nonparty who was the recipient of a subpoena.  However, that test is inapposite here.  Undue burden is a concern of the party producing the documents and on whom the subpoena is served.  Here, that is TracFone, and TracFone is not moving to quash the subpoena.

Spencer, and Adam Steinman, 9A Fed. Prac. & Proc. Civ. § 2459 (3d ed. April, 2017) (hereinafter "Fed. Prac. & Proc. Civ."). As with other discovery, the relevancy issue at the time a subpoena is served is broad—the court does not evaluate whether the evidence sought is admissible, but rather whether the information is relevant to a claim or defense and is nonprivileged. Id. The court also considers whether the information is likely to lead to the discovery of admissible evidence. Id. The party seeking to quash a subpoena bears the burden of demonstrating grounds for quashing it. Id.

**B.    Mootness**

Plaintiff states in her final reply brief that she has now herself requested the records. However, plaintiff makes no assurances she will turn those records over to defendants. Instead, plaintiff states she will "review and disclose all records [sic] are discoverable." See Docket No. 95. In the same pleading, plaintiff posits that the records are not discoverable at all because they are not relevant, they are too broad, and they represent a "fishing expedition." Accordingly, plaintiff's promise to turn over any documents plaintiff deems to be discoverable is illusory. Plaintiff establishes in the same pleading that she does not view any of the documents to be discoverable. Therefore, plaintiff's independent efforts to obtain the documents in question from TracFone does not moot defendants' subpoena *duces tecum.*

## C. Whether the Subpoena Should be Quashed or Modified

### 1. Standing

Generally, a party to a lawsuit does not have standing to seek to quash a subpoena directed to a non-party—that power lies with the non-party. See Smith v. Frac Tech Servs., Ltd., 2010 WL 3522395 at *1 (E.D. Ark. Sept. 1, 2010); Herff Jones, Inc. v. Oklahoma Graduate Servs., Inc., 2007 WL 2344705 at *3 n.4 (W.D. Ok. Aug. 15, 2007). However, when the party seeking to challenge the subpoena has a personal right or privilege in the subpoena, an exception has been made. Smith, 2010 WL 3522395 at *1; Herff Jones, Inc., 2007 WL 2344705 at *3 n.4. Here, plaintiff clearly has a personal right in the information sought. Herf Jones, Inc., 2007 WL 2344705 at *3 n.4. Accordingly, the court concludes she has standing to challenge the subpoena. See also Winter v. Bisso Marine Co., Inc., 2014 WL 3778833 at **1-2 (E.D. La. July 29, 2014).

### 2. Relevancy

Plaintiff argues that her phone records and those of S.L.'s are not relevant. Defendants argue the phone records are relevant for at least two purposes. First, they may tend to show whether S.L. welcomed Ramstorf's advances. Second, they may show witnesses to whom S.L. made communications about her work environment with defendants.

Plaintiff argues that whether S.L. welcomed Ramstorf's advances is not relevant. Since S.L. was under the age of majority under South Dakota law, the law presumes she was incapable of consent.

7

Defendants counter that S.L. testified she destroyed her cell phone after Ramstorf was arrested in March, 2016. However, Ramstorf himself told defendants that S.L. texted him in April, 2016, and another witness testified she and S.L. text each other nearly on a daily basis.

Despite recent changes to the rules of civil procedure, courts agree the scope of discovery under the Federal Rules of Civil Procedure is extremely broad. See 8 Fed. Prac. & Proc. Civ. § 2007. The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." Hickman v. Taylor, 329 U.S. 495, 507-08 (1947). Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial. See Fed. R. Evid. 401-404. These considerations are not inherent barriers to discovery, however. See Fed. R. Civ. P. 26(b). The scope of discovery under Rule 45 is the same as the scope of discovery under Rule 26. 9A Fed. Prac. & Proc. Civ. § 2452.

Plaintiff's assertion about S.L.'s "consent" is accurate. South Dakota law presumes S.L. could not consent at the age of 15. But plaintiff has asserted sexual harassment, hostile work environment, and constructive discharge claims against defendants, not Ramstorf, under Title VII. See Docket No. 56 at pp. 6-9. In those claims, plaintiff alleges Ramstorf's actions were unwelcome and unsolicited and created an intolerable working environment. Id. at ¶¶ 45, 53, 55, & 56. Plaintiff further asserts in her complaint that Ramstorf's actions

caused her pain, suffering, mental anguish, loss of enjoyment of life, loss of earned wages, and medical costs. Id. at ¶¶ 58-59. Whether S.L. found Ramstorf's actions unwelcome or unsolicited is certainly relevant to her Title VII claims. See Henthorn v. Capitol Communications, Inc., 359 F.3d 1021, 1026 (8th Cir. 2004) (hostile work environment claim requires proof that plaintiff was subjected to *unwelcome* sexual harassment).

S.L's attitude toward Ramstorf's advances is also relevant to her damages. Doe v. Oberweis Dairy, 456 F.3d 704, 714-15 (7th Cir. 2006). Plaintiff's complaint places S.L.'s mental and emotional state in issue, seeking damages for pain and suffering and emotional distress. Plaintiff cannot now shield from discovery evidence that may tend to reflect S.L.'s mental and emotional state. Anderson v. Clawson, 2014 WL 3725856 * 2 (N.D. Ca. July 25, 2014).

Finally, the records requested are also relevant to S.L.'s credibility. S.L. testified she destroyed her phone after Ramstorf was arrested. Yet there is apparently indication from another witness and Ramstorf himself that S.L. texted them *after* Ramstorf's arrest. Whether TracFone has records of texts and phone calls on S.L.'s phone number after the date of Ramstorf's arrest is relevant to S.L.'s credibility. See Syposs v. United States, 181 F.R.D. 224, 228-29 (W.D.N.Y. 1998).

Having concluded that S.L.'s phone calls and texts may be relevant to her claims, damages, and credibility, the court nevertheless points out that, at

this point, defendants' subpoena does not seek *content* of either the calls or the texts. Instead, defendants seek only a list of calls and texts made.

Defendants have filed a motion seeking permission to file a surreply for the purpose of demonstrating that S.L. was 16 years of age, the age of consent under South Dakota law, for a portion of the time she and Ramstorf were intimately involved. See Docket No. 96. Because the court finds the issue of S.L.'s age to be beside the point regarding the relevancy issues plaintiff raises, the court denies the motion to file a surreply brief.

### 3. Overbroad

Plaintiff argues that, because defendants' subpoena asks for a log of *every* call and text made during the time period set forth in the subpoena, it is overbroad. Plaintiff also asserts the time period requested under the subpoena is overbroad. Plaintiff characterizes the defendants' subpoena as a "fishing expedition."

In PHE, Inc. v. Does 1-27, 2013 WL 3225811 at *1 (E.D. Mo. June 25, 2013), a plaintiff filed suit alleging certain John/Jane Does had violated plaintiff's copyrights by downloading plaintiff's movie using an internet-based application known at Bit Torrent. The only identifying information plaintiff had about the Does was their Internet Protocol ("IP") addresses. Id. Plaintiff served a subpoena on the internet service providers for the IP addresses seeking the subscription information for each of the IP addresses. Id. The Does moved to quash the subpoena, asserting, among other things, that the IP addresses might not correspond to the person who downloaded the movie. Id. at *3. The

Does argued that the responsible person might be a visitor, a neighbor, or someone using the wireless signal from a car parked on the street. Id. The Does also argued their reputations would be damaged by having their names released to plaintiff. Id.

The court rejected these concerns, noting that the information sought need not be admissible in court as long as it was reasonably likely to lead to the discovery of admissible evidence. Id. By finding out the identity of the owner of the IP addresses, plaintiff could begin to track down the actual users who downloaded plaintiff's movie. Id. As to the embarrassment factor, the court concluded that was unfortunate, but that was a fact faced by "countless litigants in our legal system." Id. The court denied the motions to quash. Id.

Similarly, here, the documents requested by defendants' subpoena may include some phone calls or texts not directly related to the claims and defenses in this lawsuit. But they have great potential to lead to the discovery of admissible evidence, i.e. persons with whom S.L. *did* discuss the facts of this lawsuit. And it may be potentially embarrassing to S.L. to have these contacts explored or to be revealed to have misrepresented the continuing validity of her phone number after Ramstorf's arrest. Such are the vagaries of litigation. They are unavoidable.

As to the time frame set forth in the subpoena, the court finds it is not overbroad. Defendants seek information for three months predating S.L.'s employment with defendants for the purpose of finding out what S.L. knew about working for defendants or about Ramstorf in particular prior to

embarking on employment there. The subpoena ends with "the present," thus covering a period of time slightly longer than two years. That is not an unreasonable period of time given the nature of the claims made, damages demanded, and facts of the case.

### 4. Confidentiality/Privacy

There is a split of authority as to the privacy of information requested by defendants' subpoena—remembering, again, that the subpoena is not seeking content of communications, but merely the subscription information for the cell phone account and a log of each call and text made or received. Some courts, following the lead of the criminal law, have held that a person sending information over a cellular phone, whether through a call or text, has no legitimate expectation of privacy in that information. See, generally, Smith v. Maryland, 442 U.S. 735 (1979) (no reasonable expectation of privacy in phone numbers dialed out or received). That is because the person, when dialing or texting, knows he or she is sending the recipient's phone number to the cell service provider in order to effectuate the communication. By the very nature of cell phones, then, (really of any telephone, cell or land line), the user gives up their right of privacy when they voluntarily disclose the dialed number to the phone company or cell service provider.

Other courts have drawn a distinction between the criminal law's inquiry into privacy expectations under the Fourth Amendment and *confidentiality* concerns under the rules of civil discovery. See Syposs v. United States, 181 F.R.D. 224, 227 (W.D.N.Y. 1998) (holding that confidentiality concerns may

serve as a basis for a protective order or limiting discovery even though such concerns might not rise to the level of a legitimate expectation of privacy under the Fourth Amendment). The rules of civil procedure may be exercised to protect confidential or sensitive information that would not be protected under the Fourth Amendment.

The defendant in <u>Kamalu v. Walmart Stores, Inc.</u>, 2013 WL 4403903 *1 (E.D. Ca. Aug. 15, 2013), served a cell phone service provider with a subpoena seeking identical information to the subpoena defendants served on TracFone in this case. Plaintiff sought to quash the subpoena. <u>Id.</u> The court first held that the subpoena sought relevant information; plaintiff claimed she was fired for discriminatory reasons while defendant alleged it fired plaintiff for excessive cell phone use at work. <u>Id.</u> at *2. As to privacy concerns, the court held these were informed by state law. <u>Id.</u> at *3.

The court held that plaintiff had no protected privacy interest in the records requested because of the limited nature of the information sought and the limitation in time frame. <u>Id.</u> at *3-4. The court held the plaintiff also had no legitimate expectation of privacy in the records. <u>Id.</u> at 4-5. Finally, the court considered whether disclosure of the records would result in a serious invasion of a privacy interest. <u>Id.</u> at *5. Again, because the *content* of the communications was not being sought, the court found no serious invasion of privacy. <u>Id.</u>

In <u>EEOC v. Danka Industries, Inc.</u>, 990 F. Supp. 1138, 1140 (E.D. Mo. 1997), several plaintiffs brought Title VII claims against their employer alleging

13

their supervisor committed verbal and physical acts of sexual abuse against them. The defendant served subpoenas *duces tecum* on various non-parties seeking employment, medical, and educational records of the plaintiffs. Id. at 1141. Plaintiffs moved to quash the subpoenas. Id. The court denied the motions to quash in light of the fact that plaintiffs could articulate no evidentiary privilege for the documents sought. Id.

Plaintiff argues that the Telephone Records and Privacy Protection Act of 2006 makes the information defendants seek confidential. Not true. The act merely criminalizes obtaining telephone records through false or fraudulent means or accessing customer accounts without prior authorization. See 18 U.S.C. § 1039; Nat'l Cable & Telecommunications Ass'n v. F.C.C., 555 F.3d 996, 999 (D.C. 2009). The act creates no free-standing right of privacy protecting relevant information related to phones exempt from discovery.

Plaintiff also asserts that some of the phone calls and texts may be between S.L. and her attorneys. But the *fact* of a conversation occurring between S.L. and her attorneys is not privileged. S.L.'s lawyers filed suit on her behalf. Obviously they have communicated with each other. That fact, which is all the records being subpoenaed will reveal, is not privileged. Again, no content of any communication will be revealed by the records defendants are requesting.

The court has the authority to either quash or modify defendants' subpoena. See FED. R. CIV. P. 45(d)(3). This case, like the subpoena in Kamalu, involves marginal privacy concerns. Only the phone numbers of the

14

calls made and received and of texts sent and received as well as the length of phone calls will be disclosed. No content of any communication will be disclosed. Like the plaintiffs in Danka Industries, Inc., plaintiff herein has not articulated an evidentiary privilege. An interrogatory asking for a list of persons S.L. had spoken to regarding the claims at issue in this case would not only be unobjectionable, plaintiff would have had a duty to voluntarily disclose the names of those witnesses in her Rule 26 initial disclosures.

Here, the difference is that the list of phone numbers will include numbers belonging to persons S.L. has spoken to about the facts in this lawsuit (probably including Ramstorf), and also persons to whom S.L. has not made any such statements. The overinclusiveness of the subpoena is unavoidable. Given S.L.'s statements that she destroyed her phone after Ramstorf's arrest, and the apparent receipt of texts from S.L. by Ramstorf and other witnesses post-arrest, the court will not rely strictly on S.L.'s representations about what evidence exists. Defendants, having contrary evidence, have a right to seek confirmation or refutation of those statements from independent sources such as TracFone.

Given the privacy concerns discussed above, the court will not change or quash the subpoena as to S.L., but the court will entertain a protective order regarding the information which is the subject of the subpoena. See United States v. Three Bank Accounts, 2008 WL 915199 at *8 (D.S.D. Apr. 2, 2008). The parties are encouraged to draft a protective order the terms of which are

mutually agreeable to them. In the absence of an agreement, the court will impose a protective order of its own fashioning.

### 5. Kerri's Phone Records

Here, plaintiff's complaint does not include any claim on behalf of Kerri Lureen nor does Kerri seek any damages for loss of companionship or the like. Kerri is named as a plaintiff herein merely in a representative capacity. Defendants have not shown how Kerri's mental state or communications with others has any bearing on S.L.'s claims asserted herein. The court agrees with plaintiff that defendants' subpoena should be quashed as to records on Kerri's phone.[2]

## CONCLUSION

Based on the foregoing law, facts, and analysis, it is hereby

ORDERED that plaintiff's motion to quash [Docket No. 85] is denied in part and granted in part. Defendants' subpoena to TracFone is quashed entirely as to any records associated with plaintiff Kerri Lureen's cellular phone. The subpoena is left entirely intact as to records associated with S.L.'s cellular phone, subject to a protective order to be entered subsequently. The parties are directed to file a stipulated protective order within 15 days of the date of this order or, in the alternative, to notify the court within the same time period if they are unable to reach agreement on terms for a protective order.

---

[2] Defendants never assert that S.L. used Kerri's cell phone to make calls or text.

It is further

ORDERED that defendants' motion to file a surreply [Docket No. 96] is denied.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Id. Objections must be timely and specific in order to require review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED September 20, 2017.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge