UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| KERRI LUREEN, as Guardian Ad Litem of S.L., a Minor,<br><br>      Plaintiff,<br><br>vs.<br><br>DOCTOR'S ASSOCIATES, INC.; SUBWAY IP, INC.; FRANCHISE WORLD HEADQUARTERS, LLC.; METRO INITIATIVES, LLC, all d/b/a "Subway;" CHRISTOPHER JOHN HOLL, in his personal capacity and as owner; and JOHN CLARK, in his personal capacity and as owner;<br><br>      Defendants and<br>      Third-Party Plaintiffs,<br><br>vs.<br><br>KILEY RAMSTORF,<br><br>      Third-Party<br>      Defendant. | 4:17-CV-04016-LLP<br><br>ORDER GRANTING DEFENDANTS' MOTION TO COMPEL IME AND RECOMMENDING GRANTING OF AN EXTENSION OF THE SCHEDULING ORDER<br><br>Docket No. 81 |

## INTRODUCTION

This matter is before the court on the amended complaint of plaintiff Kerri Lureen, guardian *ad litem* of the minor S.L., alleging sex discrimination, hostile work environment, constructive discharge, negligence, and assault and battery as regards S.L. See Docket No. 56. Jurisdiction is founded on the presence of a federal question, diversity of citizenship of the parties, and the

court's supplemental jurisdiction. See 28 U.S.C. §§ 1331, 1332, and 1367. Defendants have filed a motion to compel S.L. to undergo an independent medical examination (IME). See Docket No. 81. Plaintiff agrees that S.L. will submit to the IME, but seeks to have a third party present with S.L. during the IME. See Docket No. 100. Plaintiff also seeks to require defendants to pay S.L. for her travel expenses and lost wages. Id. The Honorable Lawrence L. Piersol, United States District Court Judge, referred plaintiff's motion to this magistrate judge for decision pursuant to 28 U.S.C. § 636(b)(1)(A). See Docket No. 88.

**FACTS**

**A.    Background and Parties**

Plaintiff is the mother and guardian of S.L., a minor who is currently 17 ½ years old. S.L. worked for a Subway restaurant on East Arrow Avenue NE in Watertown, South Dakota, for approximately 9 months, from August, 2015, to March 16, 2016. S.L. was 15 years old at the time she went to work for Subway. S.L.'s claims center around sexual contact perpetrated by her direct manager at Subway, Kiley Ramstorf, a man 14 years older than she. The Watertown Subway was owned at the time by Metro Initiatives, LLC ("Metro"), a business entity owned by defendants Christopher John Holl and John Clark, together with Ramstorf.

Plaintiff alleges that defendants Doctor's Associates, Inc. ("DIA"); Franchise World Headquarters, LLC ("FWH"); and Subway IP (plaintiff collectively characterizes these parties as "Subway"), had substantial control over day-to-day activities of its franchisees, specifically, Metro. Plaintiff asserts

2

that the Subway defendants and Metro should be considered a single employer, joint employers, or as principal and agent.

**B.      The Facts Pertaining to the IME**

Plaintiff has placed S.L.'s mental condition at issue, asserting damages for mental and emotional distress.  Plaintiff has had S.L. examined by her own mental health expert, Dr. Sarah Flynn, who has produced a report.

Defendants seek to have S.L. undergo an IME with an expert of their own choosing, Dr. Avram Mack.  The location of the IME will be in Sioux Falls, South Dakota.  Defendants propose the exam will take approximately five hours, from 9:00 a.m. to 3:00 p.m., with regular breaks and a break for lunch.  No standardized testing will be administered during the IME.  Furthermore, defendants have agreed to video and audio record the IME.

Plaintiff seeks to have her expert, Dr. Flynn, present during the IME or, in the alternative, her lawyer.  Additionally, plaintiff seeks to have defendants pay for her travel from her home in Watertown, South Dakota, to the site of the IME in Sioux Falls.

## DISCUSSION

**A.      Provisions of Rule 35**

Rule 35 of the Federal Rules of Civil Procedure allows the court to order a party whose physical or mental condition is in controversy to submit to a mental examination by a licensed or certified examiner.  See FED. R. CIV. P. 35(a).  There must be good cause for the order, notice to the person to be examined must be given, and the court must "specify the time, place, manner,

conditions, and scope of the examination as well as the person . . . who will perform it." Id. at subsection (a)(2). The parties may also agree to the IME and the terms governing it. Id. at subsection (b)(6).

After the examination, the person who conducted it must provide the opposing party a written report setting out in detail the examiner's findings, diagnoses, conclusions, and the results of any tests. Id. at subsection (b). The patient-physician privilege does not apply to the IME, its subsequent report, or testimony given regarding the IME. Id. at subsection (b)(4).

Here, the parties have agreed to the fact of the IME, to the identity of the person who will conduct the IME, to the location of the IME and to video and audio recording of the IME. The only two conditions on which the parties disagree are (1) whether S.L. should be allowed to have her expert, Dr. Flynn, or her lawyer in the room with her during the mental exam; and (2) whether defendants should pay S.L. her mileage and lost wages for attending the IME.

**B.     Presence of a Third Party in the IME**

Rule 35 does not address the question whether a party undergoing an IME may have a third party with them during the examination. See FED. R. CIV. P. 35. There are decisions supporting both the affirmative and negative answer to this question. 8B Fed. Prac. & Proc. § 2236 (3d ed. Apr. 2017). It is well-settled that courts have the discretion to allow for the presence of a third party under appropriate circumstances. Id.; Tomlin v. Holecek, 150 F.R.D. 628, 631 (D. Minn. 1993). The "overwhelming" majority of federal courts to consider the question have disallowed third parties to attend IMEs. See

4

William S. Wyatt & Richard A. Bales, The Presence of Third Parties at Rule 35 Examinations, 71 Temp. L. Rev. 103, 110 (Spring 1998).

Where third parties have been allowed to attend an IME, it has often been where the IME is a physical examination. Where the IME concerns examination of objective, physical manifestations of injury or disease, the presence of a third party is not likely to affect the outcome of that examination.

However, this is not true regarding mental examinations. "Courts have recognized that the presence of third parties during *mental* examinations may be distracting and may alter the results of the testing." Newman v. San Joaquin Community College Dist., 272 F.R.D. 505, 513-14 (E.D. Ca. 2011) (emphasis added). "Third party observers may, regardless of their good intentions, contaminate a mental examination." Ragge v. MCA/Universal Studios, 165 F.R.D. 605, 609-10 (C.D. Ca. 1995). Because a mental examination is "an interpersonal exchange between two persons, there is by definition, a subjective component to a psychiatric examination" that can be affected by the presence of others. Sidari v. Orleans County, 174 F.R.D. 275, 291 (W.D.N.Y. 1996). "[P]sychological examinations necessitate an unimpeded, one-on-one exchange between the doctor and the patient." Letcher v. Rapid City Reg. Hosp., Inc., 2010 WL 1930113 at *8 (D.S.D. May 12, 2010) (quoting Cline v. Firestone, 118 F.R.D. 588, 589 (S.D.W. Va. 1988)).

On this basis, numerous courts have refused to allow third parties to be present during mental IMEs. See Newman, 272 F.R.D. at 513-14; Tomlin, 150 F.R.D. at 631-32 (having a third party present at a mental examination may

potentially invalidate the examination results); Tirado v. Erosa, 158 F.R.D. 294, 296 (S.D.N.Y. 1994) (disallowing attorney or stenographer to attend mental IME); Galieti v. State Farm Mut. Auto. Ins. Co., 154 F.R.D. 262, 265 (D. Colo. 1994) (disallowing third party in a mental IME). Cf. Sanden v. Mayo Clinic, 495 F.2d 221, 225 (8th Cir. 1974) (finding no abuse of discretion in the district court's refusal to allow plaintiff's physician to attend a physical IME with her).

Here, defendants' expert has submitted an affidavit stating that the presence of third parties in his mental IME with S.L. may "change the dynamics of the exam, could be disruptive and distracting and could ultimately lead to erroneous conclusions." See Docket No. 84 at p. 2, ¶ 3.a. Additionally, the affidavit reveals S.L. has interacted with her own experts and medical care providers without the presence of a third party. Id. at ¶ 3.b. Defendants' expert concedes there are circumstances where it may be necessary to have a third party present during a child's interview, but that none of those circumstances exist in S.L.'s case.[1] Id. at ¶ 3.c. Finally, defendants' expert emphasizes that the validity of mental testing depends upon creating an environment free of distractions where the subject and the examiner can develop an "independent rapport." Id. at ¶ 3.d.

Plaintiff has submitted an affidavit from her own expert stating that S.L. has suffered severe emotional and psychiatric conditions as a result of the

---

[1] The circumstances are: (1) an interpreter is needed, (2) the examiner is using techniques not generally accepted by the medical community which may be harmful, (3) the child is young with significant separation difficulties, or (4) the child has demonstrated an inability to be interviewed alone. See Docket No. 84 at p. 2, ¶ 3.c.

sexual abuse suffered by her as alleged in this lawsuit.  See Docket No. 101, p. 2 at ¶¶ 4-5.  Plaintiff's expert fears S.L. may have extreme difficulty interacting alone in a room with an unknown adult male and may lead S.L. to become "suicidal or uncontrollable in terms of her emotional status."  Id. at ¶ 6.  S.L. is currently 17 ½ years old and works outside the home.

S.L.'s age in large part distinguishes the situation from the plaintiff in Doe ex rel. Doe v. Haley, 2013 WL 6834598 (D.S.C. 2013).  The plaintiff in Doe was a 14-year-old child who suffered from attention deficit hyperactivity disorder (ADHD).  Id. at *2.  In that case, the court found special circumstances existing which warranted the plaintiff's attorney's presence during the mental exam.  Id.  However, the attorney was strictly ordered not to interfere in the examination and the court left the door open to a second round of examination if the first IME was cut short by the attorney's actions.  Id.  Here, S.L. is nearly the age of legal majority and no party has asserted that she has trouble paying attention, a condition that might skew the exam results.

Both sides have considerable gravity to their positions.  However, the entire purpose of the mental IME may be thwarted by having a third party present.  The potential harm to S.L. can be ameliorated by several prophylactic conditions.  Given that plaintiff acknowledges the propriety of having a mental IME, the court will not order one to take place under conditions which would nullify the results. Additionally, defendants' concession that they will video and audio record the IME adds another layer of protection of S.L.

7

The situation presented to this court is not unlike the facts presented in the Newman case, *supra.* Newman wanted to have third party observer with her in her mental IME as she declared she would probably "freak out and have a nervous breakdown" if she had to undergo the exam alone. Newman, 272 F.R.D. at 513. She believed the testing would be psychologically painful for her. Id. Newman, like S.L., had some serious diagnoses, including post-traumatic stress disorder and psychotic disorder. Id. at 508. The court declined to allow a support person to accompany Newman into the exam room, but ordered that the support person may be nearby during the exam and that Newman would be allowed to visit with her support person during breaks as needed. Id. at 514. This compromise position preserved the integrity of the exam and its results, while allowing Newman the security of knowing she had a support person nearby. Id.

Similarly, S.L. will not be allowed to have a third party present in the examination room with her and Dr. Mack. However, at the beginning of the testing, a third party of S.L.'s choosing may be present during the introductions. That third party must then leave the examination room and may not be present during any portion of the exam.

The third party shall be allowed to remain in the immediate environs outside the examination room, if S.L. so chooses. During the course of the day, ten-minute breaks shall be taken every two hours, during which breaks S.L. may visit outside the exam room with her chosen support person. See Hertenstein v. Kimberly Home Health Care, Inc., 189 F.R.D. 620, 625-26

(D. Kan. 1999) (where entire mental IME was only two hours, plaintiff's requests for breaks to consult with support person outside the room were denied as unnecessary and disruptive).  Alternatively, the breaks may occur at some other intervals agreed upon by the parties.  A one-hour lunch break shall be taken and S.L. may spend her lunch time with her support person if she so chooses.

**C.     Cost of Mileage and Lost Wages**

Generally, a plaintiff attending an IME in the forum he or she has chosen for the litigation must pay his or her own travel expenses.  Page v. Hertz Corp., 2011 WL 5553489 at *6 (D.S.D. Nov. 15, 2011); McClosky v. United Parcel Serv. Gen. Serv. Co., 171 F.R.D. 268, 270 (D. Ore. 1997).  Where the travel required to the site of the IME is similar to the distance a plaintiff would have to travel to the forum, plaintiffs have even been required to bear the cost of the travel to an out-of-jurisdiction IME.  Page, 2011 WL 5553489 at *7; Reed v. Marley, 321 S.W.2d 193, 195 (Ark. 1959).  Here, plaintiff chose Sioux Falls to file her lawsuit in.  The distance between her home and her chosen forum is 104 miles, less than a two-hour drive.  The court will not, under these circumstances, order defendants to pay plaintiff for cost of travel or lost wages.

## CONCLUSION

Based on the foregoing law, facts, and analysis, it is hereby

ORDERED that defendants' motion to compel [Docket No. 81] is granted. The parties shall arrange a mutually-convenient date and time for Dr. Mack to conduct his mental IME of S.L. in Sioux Falls in accordance with the conditions set forth in the body of this opinion. It is further

RECOMMENDED to the district court that the scheduling order in this matter be amended so as to allow for the mental IME of S.L. within 30 days from the date of this opinion.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Id. Objections must be timely and specific in order to require review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED October 10, 2017.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge